CELINA MUTUAL INSURANCE COMPANY, Appellant (Defendant Below),

v.

Shirley D. FORISTER, Appellee (Plaintiff Below).

No. 4–1181A173.

Court of Appeals of Indiana, Fourth District.

Aug. 11, 1982.

John T. Lorenz, Kightlinger, Young, Gray & DeTrude, Indianapolis, for appellant.

Patrick W. Harrison, Cline, King, Beck, Harrison & Runnels, Columbus, for appellee.

MILLER, Judge.

Appellant-defendant Celina Mutual Insurance Company (Celina) is appealing an adverse summary judgment rendered in favor of appellee-plaintiff Shirley D. Forister in the amount of $25,000 plus $3,333.33 in prejudgment interest together with costs. The basis for Forister's complaint against Celina is that Celina is liable to her on an unsatisfied judgment which she obtained against her former husband Parker Wells (Wells) in a personal injury action brought to remedy the injuries she received when Wells shot her in their home. At the time of the shooting Wells was covered by a broad form homeowner's policy with Celina.

Celina claims the trial court's summary judgment against it in the present case is erroneous because 1) genuine issues of ma-

terial fact exist regarding its policy defense that Forister's injuries were "expected or intended" by Wells; and 2) Celina was entitled as a matter of law to refuse to defend Wells in the Forister/Wells suit based upon the policy's exclusion of coverage for injuries expected or intended from the standpoint of the insured, and thus Celina is not precluded from raising the intended injury defense in the present action. Because we find Celina failed in its burden of establishing a genuine issue of material fact regarding its affirmative defense that Wells intentionally inflicted Forister's injuries, we affirm the trial court's judgment and need not address the second issue.

### FACTS

The facts are undisputed that on April 26, 1978 Wells injured his wife, Shirley Wells (now Forister) by shooting her in their home. At the time of the incident Wells was insured by Celina under a "Broad Form" homeowner's policy which provided:

"COVERAGE E—PERSONAL LIABILITY. This Company agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an occurrence. This Company shall have the right and duty, at its own expense, to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, but may make such investigation and settlement of any claim or suit as it deems expedient." [1]

The policy section entitled "Coverage F—Medical Payments to Others" obligated Celina

"to pay all reasonable medical expenses, incurred within one year from the date of the accident, to or for each person who sustains bodily injury to which this insurance applies caused by an accident, while

---

1. The policy defined an "occurrence" as "an accident . . . which results . . . in bodily injury

or property damage."

such person is . . . on an insured premises with the permission of any Insured; or . . . elsewhere, if such bodily injury . . . is caused by the activities of any Insured."

The exclusion section of the policy provided:

"[t]his policy does not apply . . . [u]nder Coverage E—Personal Liability and Coverage F—Medical Payments to Others . . . [for a loss due] to bodily injury . . . which is either expected or intended from the standpoint of the Insured."

Forister brought the present action against Celina on December 11, 1979 in Bartholomew Superior Court and alleged she had an unsatisfied judgment against Wells, Celina's insured, in the sum of $75,000, which judgment she had received on August 24, 1979 in a personal injury action she had brought against Wells in the Jennings Circuit Court to recover damages for her injuries resulting from the shooting incident. The theory of her present complaint is that the shooting incident was covered under Wells's homeowner policy and consequently Celina is responsible for the unsatisfied judgment against Wells. It is undisputed that Forister's complaint against Wells simply alleged Wells "negligently and carelessly shot and wounded" Forister, and Celina did not defend Wells in the Forister/Wells action. Further, the parties agree that at the time the trial court entered summary judgment in the instant case, Forister had established her judgment against Wells, the existence of the homeowner's policy and that the policy provided facial coverage for her injuries. Celina's theory of defense, as stated in the trial court's pre-trial order, was the policy specifically excluded coverage for bodily injury intentionally inflicted by the insured.

In an affidavit supporting its affirmative defense and in opposition to Forister's summary judgment motion, Celina's trial attorney averred he was "generally familiar with defendant's [Celina's] file in this matter and the various occurrences before, during and after the 1978 shooting," and asserted that the facts established the shoot-

ing to have been committed intentionally. The trial judge also conducted a hearing at which he heard testimony from Celina's counsel pertaining to Celina's refusal to defend Wells.

As noted above, the trial judge entered judgment against Celina in the sum of $25,000 (the policy limits) plus prejudgment interest in the amount of $3,333.33 together with costs.

## DISCUSSION AND DECISION

■ At the outset we note the well-settled rule that summary judgment is proper only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Criss v. Bitzegaio*, (1981) Ind., 420 N.E.2d 1221, *citing* Ind. Rules of Procedure, Trial Rule 56(E); *Shideler v. Dwyer*, (1981) Ind., 417 N.E.2d 281; *Bassett v. Glock*, (1977) 174 Ind.App. 439, 368 N.E.2d 18; *Letson v. Lowmaster*, (1976) 168 Ind.App. 159, 341 N.E.2d 785. Moreover, in summary judgment proceedings, as at trial, the burden of establishing the existence of material affirmative defenses is on the defendant. *Criss v. Bitzegaio, supra*, where the Court concluded "defendants presented no evidence in support of their allegations" that plaintiff's action to obtain an undivided one-third interest in land by virtue of a resulting trust was barred by the statute of limitations, the doctrine of laches, or the statute of frauds. *Id.* at 1225.

With respect to which party generally carries the burden of proof regarding an exception to an insurance policy, our Supreme Court has stated "[i]f the loss is within a warranty or exception, it is a matter of defence, [sic] which must be pleaded affirmatively by the defendant." *Louisville Underwriters v. Durland*, (1890) 123 Ind. 544, 547, 24 N.E. 221, 222; *e.g., State Farm Life Insurance Co. v. Spidel*, (1964) 246 Ind. 458, 202 N.E.2d 886 (the insurer has the burden of proving the affirmative defense of suicide being a risk not covered under a life insurance policy); *Red Men's Fraternal Accident Ass'n v. Rippey*, (1913) 181 Ind. 454, 103 N.E. 345 (death from a cause ex-

cepted from a life insurance policy is a matter which the insurer must plead in its answer and prove at trial). Applying this principle, this Court in *Snodgrass v. Baize*, (1980) Ind.App., 409 N.E.2d 645 (opinion on rehearing), established the elements and burden of proof in a case where a tort claimant had recovered a judgment against an insured tortfeasor, and then sought to satisfy the judgment in proceedings supplemental through a recovery on the tortfeasor's insurance policy.

> "Snodgrass [the judgment holder] established a prima facie case by presenting evidence of his judgment, the insurance policy and facial coverage under the policy, i.e., the policy provided coverage for bodily injury due to an accident caused by the insured. It then became incumbent upon Penn Mutual to go forward with evidence sufficient to create a genuine question of fact. The insurance company introduced evidence that Baize's act was intentional and, thus, not covered by the policy. The trial court, faced with a conflict in the evidence, resolved the conflict in Penn Mutual's favor. On appeal we will not reweigh the evidence."

*Id.* at 647.

In the present case the record reveals (as Celina conceded at oral argument) that at the time of summary judgment Forister had established her prima facie case—her negligence judgment against Wells, the insurance policy and facial coverage under the policy. It then became incumbent upon Celina to present material sufficient to establish a genuine issue of fact regarding its affirmative defense, that is, Wells's actions were intentional and thus fell within the intentional injury exclusion of the policy.

Here, in ruling on the summary judgment motion the trial court had before it the pleadings, Forister's motion, Celina's affidavit and the testimony of Celina's counsel.

Having reviewed these materials we find the only information to show Wells *intentionally* shot Forister, as contended by Celina both in the trial court and on appeal, is contained in the affidavit by Celina's trial counsel.[2] This affidavit as it relates to Wells's intent reads as follows:

> "Comes now defendant by its counsel, C. Richard Marshall, and being first duly sworn upon his oath, does say the following in opposition to Plaintiff's Summary Judgment Motion:
>
> 1. that he is counsel for defendant and is generally familiar with defendant's file in this matter and the various occurrences before, during and after the 1978 shooting which is the subject of this case;
>
> 2. that the shooting of Shirley Wells (now Forister) by her then husband, Parker (Parkey) Wells was accomplished by his using a 6-shot .22 cal. non-automatic revolver which required the trigger to be pulled for each shot; that on April 26, 1978, defendant's insured, Parkey Wells, discharged 5 shots from the weapon and struck plaintiff Forister with 4 of them; that said revolver had no safety on it and apparently contained only 5 shells, the empty cylinder being used as a resting place for the hammer;
>
> \* \* \* \* \* \*
>
> 6. that at the criminal trial against Mr. Wells arising out of this shooting icident [sic] (Jennings Circuit Court 78–CR–35) Mr. Wells pleaded not guilty and did *not* enter an insanity defense with a plea of not quilty [sic] by reason of insanity;
>
> 7. that at no time has Parkey Wells ever advised defendant, or claimed to defendant, that at the time of the shooting he was insane or was of an unsound mind such that he did not

**2.** Interestingly Celina's pretrial witness list, which was filed before the summary judgment motion, contained the names of state police officers who apparently were involved in an investigation of the shooting. The list also mentioned the name of a Columbus policeman who was a "firearms expert." Celina did not file any affidavits of these individuals in opposition to the summary judgment motion. Moreover, three days after summary judgment was entered Celina requested the trial court for leave to file a certified transcript of the evidence in the Forister/Wells suit. Celina never obtained a ruling on its motion.

intend or expect the shooting of or injuries to his wife."

(Record pp. 84–85.) The jurat of the affidavit read in part: the "things . . . contained [in the affidavit] are true as he [Celina's attorney] verily believes."

Ind. Rules of Procedure, Trial Rule 56(E) requires, *inter alia* : "[s]upporting and *opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.*" The assertion in a summary judgment affidavit of conclusions of law or opinions by one not shown to be qualified to testify to such will not suffice. *E.g.,* *Podgorny v. Great Central Insurance Co.,* (1974) 160 Ind.App. 244, 311 N.E.2d 640 (legal conclusions in an affidavit are insufficient to support summary judgment); *Henry B. Gilpin Co. v. Moxley,* (1982) Ind. App., 434 N.E.2d 914 (layman's expression of a proper legal fee for collection on a promissory note insufficient to support summary judgment absent a showing of competency to testify to such matters). In carrying out T.R. 56(E)'s mandate that supporting or opposing affidavits present admissible evidence, this Court recently observed that such affidavits should follow substantially the same form as though the affiant were giving testimony in court. *Coghill v. Badger,* (1982) Ind.App., 430 N.E.2d 405 (opinion on rehearing) (mere assertion in a summary judgment affidavit as to an opinion of the effect of a conversation rather than a statement of the facts of the conversation was properly ignored by the trial court). Consequently, a court considering a motion for summary judgment should disregard inadmissible information contained in either supporting or opposing affidavits. *Coghill v. Badger, supra.* "An attorney's affidavit not made on his person-

al knowledge of the facts, but merely stating what he believes or what he intends to prove at trial, does not measure up to the requirements, of [Fed.R.Civ.P.] 56(e)." 6 J. Moore & J. Wicker, *Moore's Federal Practice* ¶ 56.22[1] (2d ed. 1982), *citing Automatic Radio Mfg. Co. v. Hazeltine Research Inc.,* (1950) 339 U.S. 827, 70 S.Ct. 894, 94 L.Ed. 1312; and *King v. National Industries, Inc.,* (6th Cir. 1975) 512 F.2d 29.[3] Further, a statement as to what an affiant "verily believes" does not satisfy Fed.R.Civ.P. 56(e)'s requirement that an affidavit state matters personally *known* because belief, no matter how sincere, is not equivalent to knowledge. *Jameson v. Jameson,* (D.C.Cir.1949) 176 F.2d 58, 60. Finally, in *Cunningham v. Associates Capital Services Corp.,* (1981) Ind.App., 421 N.E.2d 681 this Court held a summary judgment affidavit did not meet the requirements of T.R. 56(E) under facts very similar to those in the case at bar. In *Cunningham,* Associates filed a motion for summary judgment with a supportive affidavit which did not address the allegations contained in Cunningham's affirmative defense. Cunningham filed an affidavit in opposition to the motion which averred generally that the affiant had perused the pleadings and affirmed that the allegations contained therein were true and correct to the best of his knowledge and belief. On appeal we found this affidavit was properly disregarded by the trial court because it did not meet T.R. 56(E)'s requirements that such affidavits shall be made on personal knowledge, must set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated.

Returning to the case at bar, the affidavit by Celina's trial counsel asserted he was "generally familiar with" the "file in this matter" and the events of this case;

**3.** The federal rule contains the following language identical to our T.R. 56(E): "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

Fed.R.Civ.P. 56(e). Where an Indiana trial rule is patterned after a federal rule, "the authorities on the latter are helpful in construing our Indiana rule." *Gumz v. Starke Cty. Farm Bureau Co-op Ass'n.,* (1979) Ind., 395 N.E.2d 257, 261.

however, there is no showing that he had personal knowledge of the statements set forth in his affidavit, nor is there any showing he would be competent to testify to the matters stated therein. The affidavit does not affirmatively indicate Celina's attorney had any firsthand knowledge of the shooting incident let alone personal knowledge of the type of weapon used, nor did the affidavit establish that the attorney was competent to testify to the mechanics of non-automatic .22 caliber revolvers. Were we free to go beyond the language of the affidavit we might be able to infer from the attorney's investigation of his case that he had some personal knowledge of revolvers; but Celina's counsel foreclosed such an inference by affirmatively stating his averments were "true as he verily believes" as opposed to "on personal knowledge." Moreover, we are mindful of authority disregarding an attorney's conclusory summary judgment affidavit even when it claims it was made on "personal knowledge" in the absence of an affirmative showing of a firsthand knowledge of the facts underlying the attorney's conclusions. *Cozzens v. Bazzani Bldg. Co.*, (E.D.Mich.1978) 456 F.Supp. 192 (where the affiant/attorney stated, in essence, that the defendant was given oral notice and the defendant received a letter but did not establish that the affiant communicated the notice or had any firsthand knowledge regarding receipt of the letter). Accordingly, we conclude the trial court properly disregarded the portions of the affidavit concerning the shooting incident and thus, as this was the only material presented which pertained to Celina's intentional injury defense, the trial court's judg-

ment was not erroneous. In sum we find, with respect to the intentional injury defense, Celina's response to the motion for summary judgment was like no response at all. Since we find Celina failed in its burden to establish a genuine issue of material fact regarding its affirmative defense, we need not discuss whether Celina's failure to defend Wells in the Forister personal injury action precluded Celina from raising that defense in the present action.[4]

Affirmed.

YOUNG, P. J., and CONOVER, J., concur.

---

4. We are aware the trial court entered findings with its summary judgment. Findings of fact are inappropriate when no issues of fact exist as in the case of summary judgment. *Uhl v. Liter's Quarry of Indiana, Inc.*, (1979) Ind.App., 384 N.E.2d 1099. Nevertheless, a statement by the trial court as to its reasons for entering summary judgment is helpful to this Court on review and it affords the appellant an opportunity to address the merits of the trial court's rationale. *Fort Wayne Patrolman's Benevolent Ass'n v. City of Fort Wayne*, (1980) Ind.App., 408 N.E.2d 1295. We are not, however, precluded from affirming a summary judgment which in the final analysis is correct, although

it may have been rendered upon a different theory than that upon which we sustain it, particularly where, as here, the trial court's findings relating to Celina's failure to defend Wells do not reveal that they are the sole basis for the trial court's judgment. *Fort Wayne Patrolman's Benevolent Ass'n v. City of Fort Wayne, supra.* Of course, where summary judgment is granted on less than all the issues, unlike the case at bar, T.R. 56 requires the trial court to state the issues and claims upon which it is granted. *Meier v. Pearlman*, (1980) Ind. App., 401 N.E.2d 31, *cert. denied* 449 U.S. 1128, 101 S.Ct. 948, 67 L.Ed.2d 115.